## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

                    *Plaintiff*,

v.

                                                        Case No. 6:23-cr-10084-EFM

DONYELL FLIPPINS, aka Dunyell P.
Flippins, aka Jocory L. Hamilton,

                    *Defendant*.

## MEMORANDUM AND ORDER

Before the Court is Defendant Donyell Flippins, aka Dunyell P. Flippins, aka Jocory L. Hamilton's objection to his classification as a Tier III sex offender under United States Sentencing Guideline ("U.S.S.G.") § 2A3.5. Defendant claims that the Kentucky statute under which he was convicted as a sex offender in 2006 categorically covers a wider range of conduct than the federal statute relevant to a Tier III classification. The Court agrees and sustains Defendant's objection.

### I.        Factual and Procedural Background

On December 21, 2023, Defendant pleaded guilty to violating the Sex Offender Registration and Notification Act ("SORNA"), 18 U.S.C. § 2250(a). Defendant had been convicted in 2006 under Kentucky statute, K.R.S. § 510.110(b),[1] for sexual abuse in the first degree of a four-year-old girl. As prepared by the U.S. Probation Office, Defendant's Presentence

---

[1] In analyzing this statute, the Court will apply the statute's language as it existed at the time of Defendant's conviction. *See, e.g.*, *United States v. Harbin*, 56 F.4th 843, 847 (10th Cir. 2022), *cert. denied*, 144 S. Ct. 106 (2023) (favorably discussing the Supreme Court's reasoning in *McNeill v. United States*, 563 U.S. 816, 820 (2011) that courts must look to "the law that applied at the time of that conviction").

Investigation Report ("PSI") labeled him as a Tier III sex offender under U.S.S.G. § 2A3.5, which meant his base offense level was 16.

Defendant objected to his classification as a Tier III sex offender. Applying the categorical approach to comparing federal and state crimes, Defendant argued that the Kentucky statute under which he was convicted allowed criminalized conduct falling outside the federal statute's parameters. After a hearing on the issue and supplemental briefing by the parties, the Court is prepared to rule on Defendant's objection.

## II.     Legal Standard

Under the United States Sentencing Guidelines, "a defendant's sentencing range is determined by a number of factors, including his offense level and criminal history."[2] When a defendant is sentenced for failure to register as a sex offender under SORNA, court musts determine the base offense level, which scrutinizes the severity of the defendant's underlying crime.[3] SORNA divides prior sexual offenses into three categories, or tiers, with the higher tier providing for a greater base offense level.[4]

To determine which tier the defendant's previous offense falls under, courts must "compar[e] the defendant's prior sex offense to statutory criteria."[5] In comparing state and federal crimes, courts usually must abide by the categorical approach.[6] The categorical approach "compare[s] the elements of the statute forming the basis of the defendant's conviction with the

---

[2] *United States v. White*, 782 F.3d 1118, 1129 (10th Cir. 2015).

[3] *See* U.S.S.G. § 2A3.5(a).

[4] 34 U.S.C. § 20911.

[5] *White*, 782 F.3d at 1130.

[6] *Id.* at 1130–31.

elements of the [predicate] crime."[7]  The purpose of the categorical approach is "to see whether the state statute shares the nature of the federal offense that serves as a point of comparison."[8] Thus, when applying the categorical approach, courts look not to the facts of the defendant's prior offense but to the elements viewed in the abstract.[9]  A notable exception under SORNA is that when a crime involves a minor, courts may "also consider the actual age of the victim by looking to the specific circumstances of the defendant's crime."[10]  Still, "the use of a circumstance-specific methodology should be limited to the determination of the victim's age."[11]

However, when a statute lists disjunctive elements, courts must apply the "modified categorical approach."[12]  This approach helps when "a divisible statute, listing potential offense elements in the alternative, renders opaque which element played a part in the defendant's conviction."[13]  Essentially, statutes listing alternative elements "cover several different crimes."[14] When applying the modified categorical approach, "a sentencing court looks to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of."[15]  The sentencing court must then categorically compare the elements of that crime with the generic offense.[16]

---

[7] *Id.* at 1131 (quoting *Descamps v. United States*, 570 U.S. 254, 257 (2013)).  Although the Supreme Court in *Descamps* used the term "generic crime," the Tenth Circuit in *White* applied the categorical approach to compare the elements of a federal statute with the elements of a state statute.

[8] *Moncrieffe v. Holder*, 569 U.S. 184, 190 (2013).

[9] *White*, 782 F.3d at 1135.

[10] *Id.*

[11] *Id.*

[12] *Mathis v. United States*, 579 U.S. 500, 505 (2016).

[13] *Descamps*, 570 U.S. at 260.

[14] *Mathis*, 579 U.S. at 515.

[15] *Id.* at 505–06.

[16] *Id.* at 506.

Nevertheless, statutes may simply list "alternative methods of committing one offense, so that a jury need not agree" on which was involved.[17]  In that case, the listed means do not change the breadth of the statute, nor do they constitute alternate elements.[18]  The Supreme Court gave by way of example:

> To use a hypothetical adapted from two of our prior decisions, suppose a statute requires use of a "deadly weapon" as an element of a crime and further provides that the use of a "knife, gun, bat, or similar weapon" would all qualify.  Because that kind of list merely specifies diverse means of satisfying a single element of a single crime—or otherwise said, spells out various factual ways of committing some component of the offense—a jury need not find (or a defendant admit) any particular item: A jury could convict even if some jurors concluded that the defendant used a knife while others concluded he used a gun, so long as all agreed that the defendant used a "deadly weapon."[19]

Thus, where a statute applies "a single, indivisible set of elements," court must apply the strictly categorical approach—*not* the modified categorical approach.[20]  In other words, if a state law defines a crime "not alternatively, but only more broadly than the generic offense," the categorical approach still applies.[21]  In that case, a statute might list alternative "means" of committing an offense without listing separate elements.[22]  Thus, the "threshold inquiry" is whether the disjunctive terms in a statute are "elements or means[.]"[23]

Normally, when interpreting state criminal statutes, courts must "giv[e] a word its commonly understood meaning when the statute itself leaves the term undefined."[24]  "A statute

---

[17] *Id.* (cleaned up) (further citation omitted).

[18] *See id.* at 516 ("[N]othing material changes if Iowa's law further notes (much as it does) that a 'premises' may include 'a house, a building, a car, or a boat.'").

[19] *Id.* at 506 (further citations, quotations, and brackets omitted).

[20] *Descamps*, 570 U.S. at 260.

[21] *Id.*

[22] Mathis, 579 U.S. at 506.

[23] *Id.* at 517.

[24] *United States v. Mendez*, 924 F.3d 1122, 1125 (10th Cir. 2019).

that mirrors the generic definition of an offense but makes minor variations in terminology will suffice if it 'corresponds in substance to the generic meaning.'"[25]   As stated by the Supreme Court,

> to find that a state statute creates a crime outside the generic definition of a listed crime in a federal statute requires more than the application of legal imagination to a state statute's language.   It requires a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime.[26]

The defendant bears the burden to show that undefined elements may be interpreted broader than the  generic definition suggests and may do so in two ways.[27]   First, the defendant "may show that the statute was so applied in his own case."[28]   Second, he may point to "other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues."[29]

### III.     Analysis

Defendant objects to his PSI in this case which labels him as a Tier III sex offender, resulting in a base offense level of 16.  He argues that the Kentucky statute under which he was convicted in 2006 categorically prohibits a wider range of conduct than required to categorize a defendant as a Tier III sex offender.  In contrast, the Government argues that the Kentucky statute is equivalent to 18 U.S.C. § 2244, which qualifies as a Tier III sexual offense.

### A.     The statutory backdrop of Defendant's objection.

Here, Defendant was convicted for sexual abuse in the first degree under K.R.S. § 510.110. At the time of Defendant's offense in 2006, the statute stated in full:

(1) A person is guilty of sexual abuse in the first degree when:

---

[25] *Id.* (quoting *Taylor v. United States*, 495 U.S. 575, 599 (1990)).

[26] *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007).

[27] *Id.*

[28] *Id.*

[29] *Id.*

> (a) He or she subjects another person to sexual contact by forcible compulsion; or
>
> (b) He or she subjects another person to sexual contact who is incapable of consent because he or she:
>
>> 1. Is physically helpless;
>>
>> 2. Is less than twelve (12) years old; or
>>
>> 3. Is mentally incapacitated.

Because K.R.S. § 510.110 lists at least two sets of alternative elements—sexual contact by forcible compulsion *or* sexual contact with a person incapable of consent in one of three ways— the Court must apply the modified categorical approach to determine which elements the Kentucky court applied to Defendant's case.  Here, the record establishes that Defendant's offense was against a minor who was 4 years old at the time of the offense.  There does not appear to be any indication that Defendant was charged under K.R.S. § 510.110(1)(a) or that the minor was physically helpless or mentally incapacitated during the offense.  The parties agree that K.R.S. § 510.110(1)(b)(2) is the section under which Defendant pleaded guilty.  Therefore, the Court will analyze K.R.S. § 510.110(1)(b)(2) when determining whether Defendant's past offense equivalates to a Tier III crime.

K.R.S. § 510.110(1)(b)(2) lacks a definition for "sexual contact." By reference, K.R.S. § 510.010(7) provides the definition, which in 2006 defined "sexual contact" as "any touching of the sexual or other intimate parts of a person done for the purpose of gratifying the sexual desire of either party."[30]

---

[30] Both statutes also require that the touching be done for the "purpose of sexual arousal or gratification of either party," K.R.S. § 510.010(7), or "with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." 18 U.S.C. § 2246(3).  But that is not at issue in this case.

Turning to the equivalent federal crime, 34 U.S.C. § 20911 describes a "Tier III sex offender" as one whose offense is comparable to "abusive sexual contact (as described in section 2244 of Title 18) against a minor who has not attained the age of 13 years."[31]  The definition for Tier II offenders uses the same criteria for "abusive sexual contact" as Tier III, the difference being the contact must have been with a minor 13 years old or older.[32]  Finally, Tier I "means a sex offender other than a tier II or tier III sex offender."[33]

For its part, 18 U.S.C. § 2244 references 18 U.S.C. § 2241, effectively substituting "sexual contact" for "sexual act."  Relevant here, § 2241(c) criminalizes "knowingly engag[ing] in a sexual act [or sexual contact] with another person who has not attained the age of 12 years."  "Sexual contact" is then defined by 18 U.S.C. § 2246(3) as "the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person."

## B.   Based on his prior conviction, Defendant qualifies as a Tier I sex offender.

Despite the labyrinthine statutory review needed to even approach the question in this case, the question itself is relatively simple: is the Kentucky definition of "sexual contact" broader than its federal counterpart?  In other words, the Court must determine whether the definition of "sexual contact" under 18 U.S.C. § 2246(3) categorically matches the definition of "sexual contact" under K.R.S. § 510.010(7).  The other elements of the statutes are not at issue.  Thus, if by its definition of "sexual contact" K.R.S. § 510.010(7) allows for conviction under K.R.S. § 510.110(1)(b)(2) for

---

[31] 34 U.S.C. § 20911(4)(A)(ii).

[32] *Id.* § 20911(3)(A)(vi).

[33] *Id.* § 20911(2).

conduct that would not result in conviction under 18 U.S.C. § 2244 (by way of 18 U.S.C. § 2241(c)), then Defendant is not a Tier III offender.

As an initial matter, it is clear that the definitional statute—K.R.S. § 510.010(7) describes a single indivisible element—sexual contact—not divisible elements that would trigger the use of the modified categorical approach.  And as agreed by the parties, "other intimate parts" in K.R.S. § 510.010(7) refers not to a separate crime but rather to the means of committing the same crime. Thus, the Court will apply the categorical approach in interpreting K.R.S. § 510.010(7).

Here, the Kentucky statute on its face appears to be little more than a slight variation on the generic definition of "sexual contact."  Nevertheless, Defendant interprets the phrase "other intimate parts" to cover a broader swath of conduct than the very specified list of body parts necessary for "sexual contact" under 18 U.S.C. § 2246(3).  Accordingly, Defendant bears the burden to show that Kentucky courts would interpret "other intimate parts" to apply to facts beyond the scope of 18 U.S.C. § 2246(3)'s definition.

Defendant successfully meets his burden in this case.  He points to Kentucky caselaw, *Bills v. Kentucky*,[34] where the Kentucky Supreme Court interpreted K.R.S. § 510.010(7)—using the same language as when Defendant was convicted under the statute in 2006—broadly to include touching of the "legs" and "thigh."[35]  Although 18 U.S.C. § 2246(3) includes touching of the inner thigh within "sexual contact," legs and simply "the thigh" are beyond its scope.  Therefore, Defendant has successfully shown that K.R.S. § 510.010(7) allows a defendant to have been convicted under K.R.S. § 510.110(1)(b) for conduct that does not fall under 18 U.S.C. § 2244. Therefore, categorically speaking, K.R.S. § 510.110(1)(b) is not equivalent to 18 U.S.C. § 2244.

---

[34] 851 S.W.2d 466 (Ky. 1993).

[35] *Id.* at 472.

Accordingly, Defendant's classification as a Tier III offender under 34 U.S.C. § 20911 is improper.  Similarly, because the definition for Tier II offenders also utilizes the federal definition of "abusive sexual contact," K.R.S. § 510.110(1)(b) is also not equivalent to a Tier II classification. Therefore, Defendant must be classified as a Tier I offender.  As a Tier I offender, Defendant's base offense level under U.S.S.G. § 2A3.5 is 12 instead of 16.

**IT IS THEREFORE ORDERED** that Defendant's Sentencing Objection 2 is **SUSTAINED**.

**IT IS SO ORDERED.**

Dated this 9th day of July, 2024.


ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE